RECEIVED

2005 MAY -2 ℗ 3: 58

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SHIRLEY MAHONE,  §
  §
  Plaintiff,  §
  §
v.  §    Case No.: _2:05 cv 405-D_
  §
HARRAH'S ALABAMA  §
CORPORATION, d/b/a HARRAH'S  §
ENTERTAINMENT CENTER, *et al.,*  §
  §
  Defendants.

## HARRAH'S ALABAMA CORPORATION'S MOTION TO DISMISS

COMES NOW Defendant Harrah's Alabama Corporation and, pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, hereby moves this Honorable Court to dismiss it as a Defendant in this matter or, in the alternative, to grant summary judgment in its favor, as there is no question of fact concerning the claims advanced against Harrah's Alabama Corporation. In support of this motion, Harrah's Alabama Corporation states as follows:

1.    This action arises out of the non-payment of a jackpot allegedly won by Plaintiff Shirley Mahone on March 10, 2005 at the gaming facility located at 1801 Tullis Drive, Montgomery, Alabama.    The Plaintiff alleges that the gaming facility was "Defendant Harrah's establishment" and therefore Harrah's Alabama Corporation is liable to the Plaintiff under theories of Fraud, Breach of Contract, Defamation and Conspiracy.

2.    The Complaint is due to be dismissed because Harrah's Alabama Corporation had absolutely no involvement in the gaming establishment where the jackpot was purportedly won. To the contrary, the gaming establishment is managed, supervised, controlled and operated by

SCANNED

P.C.I. Gaming (a business enterprise of the Poarch Band of Creek Indians) and is located on Indian (tribal) reservation property.

3.      Moreover, the Complaint is due to be dismissed because the Tribal Court of the Poarch Band of Creek Indians has exclusive jurisdiction over the claims made the basis of the Complaint.

4.      To the text the Plaintiff claims that Harrah's Alabama Corporation was operating as a representative or agent for P.C.I. Gaming or the Poarch Band of Creek Indians, Harrah's Alabama Corporation is entitled to tribal sovereign immunity.

5.      In support of this motion, Harrah's Alabama Corporation relies upon the following:

a.      The Affidavit of Dennis Gallagher, attached hereto as **Exhibit A**;

b.      Pertinent portions of The Tribal Code of the Poarch Band of Creek Indians, attached hereto as **Exhibit B**;

c.      The Affidavit of George Baker, attached to George Baker's Motion to Dismiss as **Exhibit A**;

d.      The Affidavit of Silke Johnson, attached to George Baker's Motion to Dismiss as **Exhibit B**;

e.      The Warranty Deed for the property in question, attached to George Baker's Motion to Dismiss as **Exhibit C**;

f.      The Complaint filed in this matter; and

g.      The Memorandum Brief, separately filed.

Respectfully submitted, this the 2nd day of Mary, 2005.

2

_____
R. AUSTIN HUFFAKER, JR. (ASB-3422-F55R)
Attorney for Defendant
Harrah's Alabama Corporation

RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277
Email: RAH2@RSJG.COM

## CERTIFICATE OF SERVICE

I do hereby certify that on the 2ⁿᵈ day of May, 2005, I caused a true and correct copy of the foregoing document to be served *by United States Mail* to the following counsel of record:

Christopher E. Sanspree
Beasley, Allen, Crow, Methvin, Portis & Miles P.C.
Post Office Box 4160
Montgomery, AL  36103


_____
OF COUNSEL

4

EXHIBIT

_A_

## AFFIDAVIT OF DENNIS GALLAGHER

STATE OF NEVADA                )

COUNTY OF CLARK              )

Before me, the undersigned Notary Public in and for said state and county,

personally appeared Dennis Gallagher, who is known to me, and who being by me first

duly sworn, deposes and states as follows:

I am Dennis Gallagher, and I reside in Henderson, Nevada. I am Assistant Secretary of Harrah's Alabama Corporation. I have personal knowledge of the matters and transactions set forth hereafter.

Harrah's Alabama Corporation is a Nevada corporation with its principal place of business in Las Vegas, Nevada. Harrah's Alabama Corporation is a wholly-owned subsidiary of Harrah's Operating Company, Inc.

Harrah's Alabama Corporation is a single purpose entity, created for the sole purpose of contracting with P.C.I. Gaming related to its current and proposed gaming business on the lands of the Poarch Band of Creek Indians in Wetumpka, Alabama. Harrah's Alabama Corporation does not currently operate, maintain, supervise or manage, nor has it ever, any casinos or bingo parlers in the State of Alabama. Harrah's Alabama Corporation does not own, maintain, operate, lease or rent any gaming devices in the State of Alabama including any electronic bingo machines or slots.

I have read the Complaint filed against Harrah's Alabama Corporation by Shirley Mahone in the Circuit Court of Montgomery County, Alabama, CV-05-724 (the "Complaint"). The Complaint states that Harrah's Alabama Corporation does business as Harrah's Entertainment Center. Harrah's Alabama Corporation does not do business, nor has it ever done business, under the name of Harrah's Entertainment Center or the name of Tallapoosa Entertainment Center.

The Complaint alleges that on March 10, 2005, Shirley Mahone entered Harrah's Alabama Corporation's establishment at 1801 Tullis Drive, Montgomery, Alabama. Harrah's Alabama Corporation has no such establishment at that address, nor does it currently operate, conduct, perform, maintain, supervise or manage any gaming or entertainment establishments at that address.

The establishment described in the Complaint is actually called the Tallapoosa Entertainment Center. The Tallapoosa Entertainment Center is operated by P.C.I. Gaming, which is a gaming business enterprise of the Poarch Band of Creek Indians, and is located on land which I understand is owned by the United States of America and held in trust for the Poarch Band of Creek Indians. Harrah's Alabama Corporation has no involvement in the management or operations of the Tallapoosa Entertainment Center, nor does it provide any assistance or consulting services to PCI Gaming in operating that facility. Further, Harrah's Alabama Corporation does not own, operate, lease or rent any gaming machines at that facility.

The Complaint also names George Baker and Silke Johnson as Defendants. These individuals are not employees, officers, directors or agents of Harrah's Alabama Corporation, nor have they ever been employees, officers, directors or agents of Harrah's Alabama Corporation.



DENNIS GALLAGHER

SWORN TO AND SUBSCRIBED before me this __28th__ day of __April__, 2005.

(SEAL)

JENNY R. SHOLER
Notary Public, State of Nevada
Appointment No. 04-90329-1
My Appt. Expires Jul 7, 2008

Notary Public
My Commission
Expires: __07/07/08__

**Poarch Band of Creek Indians Code**

As Amended: June 7, 1997; [Includes some revisions dated 1999.]



EXHIBIT
tabbies*
B

# §1-1-1 TRIBAL SOVEREIGNTY

This Tribal Code of the Poarch Band of Creek Indians and all amendments thereto represent the principles of independence, self-government, and sovereignty of the Poarch Band of Creek Indians. The sovereign immunity of the Poarch Band of Creek Indians is not waived by any section, part, word, or phrase contained in this Tribal Code or amendments thereto. It is the purpose and intent of the Poarch Band of Creek Indians in adopting this Tribal Code and all amendments thereto to continue, maintain, and preserve the sovereign rights of self-government of the Poarch Band of Creek Indians.

Back to Top

## Poarch Band of Creek Indians Code

As Amended: June 7, 1997; [Includes some revisions dated 1999.]

# §4 JURISDICTION

### §4-1-1 Personal Jurisdiction - Civil

The Tribal Court shall have civil jurisdiction over the person as follows:

(a) All persons residing, located or present within or upon reservation property; or,

(b) All persons who transact, conduct or perform any business or activity within or upon reservation property, either in person or by an agent or representative, for any act prohibited by the Tribal Code or other ordinance of the tribe arising from such business activity; or,

(c) All persons who own, use or possess any property within the reservation for any action arising under this code or other ordinance of the tribe;

(d) All persons who commit tortious acts or engage in tortious conduct on or within the reservation, either in person or by an agent or representative; or

(e) All enrolled tribal members, members of other federally recognized tribes on or within the reservation or doing business with the tribe.

### §4-1-2 Personal Jurisdiction - Criminal

The Tribal Court shall have criminal jurisdiction over the person as follows:

(a) All enrolled tribal members, or other federally recognized Indians for any violation of a criminal offense contained in the Tribal Criminal Code or other ordinance of the. Tribe when the criminal offense is alleged to have occurred on or within the reservation or within . the territorial jurisdiction of the tribe; or

(b) All enrolled tribal members,or other federally recognized Indians who commit a criminal offense as set out in the Tribal Criminal Code or other ordinance of the tribe, by their own conduct or the conduct of another for which they are legally accountable if:

   (1) The conduct occurs either wholly or partially on or within the reservation or territorial jurisdiction of the tribe; or,

   (2) The conduct which occurs outside the reservation or territorial jurisdiction of the tribe constitutes an attempt, solicitation or conspiracy to commit an offense within the reservation or territorial jurisdiction of the tribe and an act in furtherance of the attempt or conspiracy occurs within the reservation or territorial jurisdiction of the tribe; or,

   (3) The conduct which occurs within the reservation or territorial jurisdiction of the tribe

offense prohibited by the Tribal Criminal Code or other ordinance of the tribe and is also prohibited by the other jurisdiction.

## §4-1-3 Jurisdiction Over Property

The Tribal Court shall have civil and criminal jurisdiction over property, real and personal, as follows:

(a) All property located on or within the reservation and/or territorial jurisdiction of the tribe;

(b) Any property which has been unlawfully removed from the reservation or territorial jurisdiction of the tribe;

(c) All property of the Poarch Band of Creek Indians wheresoever located.

## §4-1-4 Subject Matter Jurisdiction

(a) The Tribal Court shall have subject matter jurisdiction over all civil actions in which the Tribal Court has jurisdiction over the person or property;

(b) The Tribal Court shall have jurisdiction over all criminal matters alleged to be committed by tribal members, members of other federally recognized tribes within the reservation and jurisdiction of the Tribal Court.

## §4-1-5 Original and Exclusive Jurisdiction

(a) The Tribal Court shall have original and exclusive jurisdiction over all civil matters within the jurisdiction of the Tribal Court.

(b) The Tribal Court shall have original and exclusive jurisdiction over all criminal offenses committed within the territorial jurisdiction,,of the tribe by enrolled members of the tribe,or other federally recognized Indians,except to the extent that the Major Crimes Act or other Federal Laws provide for criminal jurisdiction on Indian Reservations,or within the territorial jurisdiction of Indian Tribes, and in that event, the jurisdiction shall be concurrent with the United States Government. The State of Alabama shall have no jurisdiction, criminal or civil, within the reservation or territorial jurisdiction of the tribe and there shall be no concurrent jurisdiction with the State of Alabama with respect to the jurisdictiontion of the tribe for civil or criminal matters, unless and only to the extent that approval has been given for the same by the Tribal Council.

Back to Top

## Poarch Band of Creek Indians Code

As Amended: June 7, 1997; [Includes some revisions dated 1999.]

# §11 CIVIL ACTIONS

### §11-1-1 Cause of Action and Defenses

(a) Civil actions in the Tribal Court of the Poarch Band of Creek Indians shall include but not be limited to all civil causes of action and defenses thereto which are cognizable in the trial courts of the State of Alabama. The Tribal Court shall not be bound by, but may consider, within its sole discretion, any appellate court decisions of the appellate courts of the State of Alabama in interpreting causes of action or defenses thereto. The recognition of causes of action and defenses thereto which are cognizable in the trial courts of the State of Alabama is not and shall not be deemed a waiver of tribal sovereignty or jurisdiction with respect to the Tribe or Tribal Courts.

Back to Top

# Poarch Band of Creek Indians Code

As Amended: June 7, 1997; [Includes some revisions dated 1999.]

## TITLE 20 GAMING

**APPROVED 7-26-93**
**INITIALS_____**
[Initials on original document.]
[Applies to Title 20.]

An Ordinance to authorize, license and regulate all classes of gaming on lands of the Poarch Band of Creek Indians and to create a Tribal Gaming Commission.

### CHAPTER I GENERAL PROVISIONS

**Section 20-1-1. Declaration of policy.**

The policy of the Poarch Band of Creek Indians in promulgating this Ordinance is as follows:

(a) That all classes of gaming shall be permitted upon the Reservation;

(b) That gaming on the Reservation shall be regulated in a manner that adequately protects the environment, the public health, welfare and morals of all persons residing on the Preservation, all invitees to the gaming establishment and the tribe from any adverse effects that may derive from unregulated gaming;

(c) That there shall be a continuing effort to maximize the potential for revenue from any Tribal gaming establishment and to sustain the highest achievable levels of that revenue in order to provide funds for the support of

(1) Tribal operations or programs;

(2) The general welfare of the Tribe and its members;

(3) The operation of local governmental agencies;

(4) Charitable organizations; and/or

(5) Economic development;

(d) That the Tribe shall have the sole proprietary interest in and responsibility for the conduct of all gaming activities on the Reservation; and

(e) That the conduct of gaming activities provided for within this Ordinance shall comply with the Indian Gaming Regulatory Act, 25 U.S.C. sections 2701, and any relevant regulationspromulgated by the National Indian Gaming Commission or the Bureau of Indian Affairs.

Section 20-1-2. Definitions.

As used in this Ordinance, unless the context requires otherwise, the following terms shall have the following meanings, respectively:

### (1) ACT.

The Indian Gaming Regulatory Act, Act of October 17, 1988, Public Law 100-497, 102 Stat. 2467, codified in 25 U.S.C. section 2701 et seq.

### (2) BINGO.

That game, whether or not electronic, computer, or other technologic aids are used, in which each participant receives or more cards, each of which is marked with numbers or other designations. The players cover such numbers or designations when objects similarly numbered or designated are drawn or electronically determined. The winner of each game is the player or players first properly covering a predetermined and announced pattern on such card(s).

### (3) CHEATING.

Operating or playing a game in a manner that violates written or commonly understood rules of the game, with the intent to create for himself or herself or someone in privity with him or her an advantage over and above the chance of the game.

### (4) CLASS I GAMING.

Social games played solely for prizes of minimal value, or traditional forms of Indian gaming when played by individuals in connection with tribal ceremonies or celebrations.

### (5) CLASS II GAMING.

Class II gaming shall mean:

(a) Bingo or lotto (whether or not electronic, computer, or other technologic. aids are used) when players:

> (1) play for prizes with cards bearing numbers or other designations;

> (2) cover numbers or designations when object, similarly numbered or designated, are drawn or electronically determined; and

> (3) win the game by being the first person to cover a designated pattern on such cards;

(b) If played in the same location as bingo or lotto, class II gaming shall include pull-tabs, punch boards, tip jars, instant bingo, and other games similar to bingo; and

(c) Nonbanking card games that

> (1) state law explicitly authorizes, or does not explicitly prohibit, and are played legally anywhere in the state, and

> (2) players play in conformity with state laws and regulations concerning hours, periods of operation, and limitations on wagers and pot sizes.

### (6) CLASS III GAMING.

All forms of gaming that are not class II gaming or class III gaming, including but not limited to:

(a) Any house banking game, including but not limited to --

> (1) card games such as baccarat, chemin de fer, blackjack (21), and pai gow (if played as house banking games;

> (2) casino games such as roulette, craps, and keno;

(b) Any slot machines as defined to 15 U.S.C. 1171(a)(1) and electronic or electromechanical facsimiles of any game of chance;

(c) Any sports betting and parimutuel wagering including but not limited to wagering on horse racing, dog racing or jai alia; or

(d) Lotteries.

### (7) COMMISSION.

The Gaming Commission of the Poarch Band of Creek Indians as created pursuant to this Ordinance.

### (8) COUNCIL.

The Tribal Council as defined in the Constitution of the Poarch Band of Creek Indians.

### (9) GAMING ESTABLISHMENT.

Each place, facility, or location on the Reservation where class II or class III gaming is conducted.

### (10) HOUSE BANKING GAME.

Any game of chance that is played with the house as a participant in the game, where the house takes on all players, collects from all losers, and pays all winners, and the house can win.

### (11) IN PRIVACY WITH.

One who acts jointly with another, or as an accessory before the fact to an act committed by the other, or as a co-conspirator with the other.

### (12) KEY EMPLOYEE.

A person who performs one or more of the following functions: bingo caller, counting room supervisor, chief of security, custodian of gaming supplies or cash, floor manager, pit boss, dealer, croupier, approver of credit or custodian of gambling devices including persons with access to cash and accounting records within such devices. If not otherwise included in the forementioned definition, any other person whose total cash compensation is in excess of $50,000 per year. If not otherwise included in the forementioned definition, the four most highly compensated persons in the gaming establishment.

### (13) MANAGEMENT CONTRACT OR AGREEMENT

Any contract, subcontract, or collateral agreement between the Tribe or a Tribal enterprise and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming establishment.

**(14) MANAGEMENT CONTRACTOR.**

The person designated by the management contract as having management responsibility for the gaming establishment, or a portion thereof.

**(15) PERSON.**

Any individual, firm, partnership, corporation, company or association.

**(16) PERSON HAVING A DIRECT OR INDIRECT FINANCIAL INTEREST IN A MANAGEMENT CONTRACT.**

(a) When a person is a party to a management contract, any person having a direct financial interest in such management contract;

(b) When a trust is a party to a management contract, any beneficiary or trustee;

(c) When a partnership is a party to a management contract, any partner;

(d) When a corporation is a party to a management contract, any person who is a director or who holds at least ten percent (10%) of the issued and outstanding stock alone or in combination with another stockholder who is a spouse, parent, child or sibling, or

(e) When an entity other than a natural person has an interest in a trust, partnership or corporation that has an interest in a management contract, all parties of that entity are deemed to be persons having a direct financial interest in a management contract.

**(17) PLAYER.**

A person participating in a game with the hope of winning money or other benefit, but does not include a licensee, or any assistant of a licensee.

**(18) PRIMARY MANAGEMENT OFFICIAL.**

(a) The person having management responsibility for a management contract;

(b) Any person who has authority:

    (1) to hire or fire employees or

    (2) to set up working policy for the gaming operation; or

(c) The chief financial officer or other person who has financial management responsibility.

**(19) PROGRESSIVE GAME.**

A game for which the prize increases at announced increments for a succeeding session when no player wins the prize at the immediately preceding session of a game.

**(20) RESERVATION.**

All lands either held in trust by the United States of America for the Poarch Band of Creek Indians or held by the Poarch Band of Creek Indians subject to restrictions by the United States of America against alienation, whether presently held or acquired in the future.

**(21) TRIBE.**

to 25 U.S.C. 476 and the Act of June 18, 1934 (48 Stat. 984), its authorized officials,
agents, and representatives.

# CHAPTER 2 TRIBAL GAMING COMMISSION

## ARTICLE 1 ORGANIZATION AND PERSONNEL

### Section 20-2-2. Commission established.

A commission to be known as the Poarch Creek Indian Gaming Commission, consisting of five (5)
members, is hereby established.

Section 20-2-2. Appointment of commissioners; terms of office; filling of vacancies.

(a) The Vice-Chairman of the Tribal Council shall serve as the Chairman of the Tribal Gaming
Commission. The four (4) additional members of the Commission shall be appointed by the Chairman
of the Tribal Council from within the membership of the Tribe from names submitted by the Tribal
Council. These appointments shall be subject to confirmation by the Tribal Council.

(b) The Chairman shall serve in such position for the length of his or her term as Vice-Chairman of the
Tribal Council. The four (4) additional members shall serve for a term of four (4) years provided that
the four (4) initial members of the Commission shall be appointed to terms as follows: one to a term
of four (4) years, one to a term of three (3) years, one to a term of two (2) years, and one to a term
of one (1) year, so that no more than two (2) commissioners are due to be reappointed in any one
year.

(c) If any vacancy should occur in any one of said offices, caused by death, resignation or otherwise,
such vacancy shall be filled by appointment by the Chairman of the Tribal Council, subject to the
approval of the Tribal Council. The appointee shall hold the position for the balance of the unexpired
term.

### Section 20-2-3. Certain persons ineligible to be commissioners.

(a) No person having a direct or indirect financial interest in or relationship to a person or entity
holding a valid management contract with the Tribe or a Tribal enterprise shall be eligible to serve as
a member of the Commission.

(b) Commissioners must be persons of good character, honesty, and integrity, and persons whose
prior activities, criminal record, reputation, habits, and associations do not pose a threat to the public
interest of the Reservation or to the effective regulation and control of gaming, or create or enhance
the dangers of unsuitable, unfair, or illegal practices, methods, and activities in the conduct of gaming
or the carrying on of the business and financial arrangements incidental to the conduct of gaming.

(c) Each commissioner shall be appointed subject to the successful completion of a background
investigation. Such investigation shall be conducted following the procedures of section 20-4-1 of this
Ordinance as it relates to board members of Tribal gaming enterprises, except that final approval or
denial of the character of the initial commissioners shall be made by the Trial Council.

### Section 20-2-4. Meetings; Election of a Vice-Chairman; Quorum.

Meetings shall be held at such times and places as may be necessary for the proper discharge of the
Commission's duties. A Vice-Chairman shall be elected at the Commission's initial meeting and

procedural rules for the conduct of business shall be adopted. Three members of the Commission, at least one of which is the Chairman or Vice-Chairman, shall constitute a quorum.

## Section 20-2-5. Impeachment and removal of commissioners.

Any commissioner may be impeached and removed from their position at any time for just cause as determined by the Tribal Council.

## Section 20-2-6. Salaries of commissioners.

Commissioners shall receive reasonable payment for attending meetings and shall be reimbursed for expenses incurred during their term of office. The amount and method of these payments shall be determined by the Commission in accordance with all applicable rules and regulations.

## Section 20-2-7. Penalty for divulging certain information.

Any commissioner who divulges any fact or information coming to his or her knowledge not generally known by the public respecting any aspect of his or her duties as a commissioner, except insofar as he or she may be authorized by the Commission or a court of competent jurisdiction, or a judge thereof, is guilty of a class C misdemeanor.

## Section 20-2-8. Commissioners prohibited from participating in Tribal gaming activities.

No member of the Tribal Gaming Commission shall be permitted to participate in any gaming activity within any Tribal gaming establishment except for any such participation engaged in solely for educational or instructional purposes.

## ARTICLE 2 POWERS AND DUTIES GENERALLY

## Section 20-2-8. Exclusive power and jurisdiction.

The rights, powers, authority, jurisdiction, and duties conferred by this title upon the Commission shall be exclusive and shall be exercised so far as they may be exercised consistently with the Constitution of the Poarch Band of Creek Indians and all other titles of this Code.

## Section 20-2-9. Powers and duties of the Commission.

The Commission shall have the authority and responsibility to:

(1) Enforce and administer all provisions of this Ordinance;

(2) Recommend to the Tribal Council the promulgation of regulations;

(3) Issue and renew gaming licenses as provided in this Ordinance;

(4) Revoke, suspend, condition, or deny an application or gaming license for any reason specified within this Ordinance;

(5) Require that a bond in an amount of up to $1,000,000.00 be posted by a management contractor to ensure performance of a management contract and to ensure conformance with all applicable rules and regulations;

(6) Increase the respective amounts of the application and license fees provided that such fees shall not be increased retroactively;

(7) Conduct or cause to be conducted any background investigation required by this Ordinance;

(8) Determine the eligibility of persons to serve as Primary Management Official, Key Employee, or board member of any Tribal gaming enterprise;

(9) Determine the suitability of a management contractor based on the character of persons having a direct or indirect financial interest in a management contract;

(10) Require the bonding of Primary Management Officials, Key Employees, or other employees as deemed necessary;

(11) Provide on-site supervision of any Tribal gaming establishment, whether this be done directly or by hiring individuals to perform such function;

(12) Investigate any reported violation of this Ordinance, or any other relevant document, by any Tribal gaming establishment, gaming employee, or any other person;

(13) Assess and collect any fees, penalties, or interest as provided for in this Ordinance;

(14) Deposit all fees, penalties, or interest collected under the authority of this Ordinance into an account to the credit of the Commission;

(15) Maintain a correct and full accounting of all fees, penalties, and interest received as well as all expenses incurred under the authority of this Ordinance, and provide a monthly record of that accounting;

(16) Review or cause to be reviewed all financial data, records, and accounts of a gaming establishment and insect the premises and operations as it deems necessary for the enforcement of this Ordinance;

(17) Audit or cause to be audited the expenditures, receipts and reports of any gaming establishment;

(18) Pay or cause to be paid any fees, penalties, or interest, as required, relating to the conduct of gaming on the Reservation;

(19) Require at its discretion any Management Contractor to allow a person of the Commission's choosing in any room of the establishment who shall have a full opportunity to monitor operations at all times the establishment is in operation:

(20) Provide or cause to be provided such information as may be required by this Ordinance to the National Indian Gaming Commission;

(21) Draw up forms as it deems necessary;

(22) Enforce and administer all provisions of any other document entered into by the Tribe or a Tribal

enterprise relating to gaming;

(23) Institute such legal proceedings in the name of the Poarch Band of Creek Indians in Tribal Court or any other court as it deems necessary for the enforcement of this Ordinance;

(24) Conduct hearings as provided for within this Ordinance;

(25) Take such other actions and issue such orders as the Commission may deem necessary and proper to fully perform its duties and responsibilities under this Ordinance.

## Section 20-2-10. Specific obligation of the Commission.

The Tribal Gaming Commission shall have a specific obligation to ensure that any person involved with the conduct of gaming activities on the Reservation is:

(1) A person of good character, honesty, and integrity; and

(2) A person whose prior activities, criminal record, reputation, habits, and associations do not pose a threat to the public interest of the Reservation or to the effective regulation and control of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, and activities in the conduct of gaming or the carrying on of the business and financial arrangements incidental to the conduct of gaming.

## §20-2-11. Prohibited actions.

(a) In addition to those actions or omissions prohibited elsewhere within this Ordinance, the following actions or omissions are hereby prohibited:

(1) No person shall provide, operate, or conduct any gaming activity in a gaming establishment within the exterior boundaries of the Tribe's reservation without a gaming license issued by the Tribal Gaming Commission as prescribed by this Ordinance;

(2) No person shall provide false information in connection with any document or proceeding under this Ordinance;

(3) No person shall fail to account fully for all monies received, collected, or paid in connection with gaming activities;

(4) No person under the age of eighteen (18) years shall be permitted to participate in gaming activities;

(5) No person shall engage in cheating in any gaming activity;

(6) No person, other than a law enforcement officer or security personnel, may enter or remain to a gaming establishment licensed under this Ordinance while in the possession of a firearm;

(7) No person shall intentionally violate any provision of this Ordinance or any order of the Tribal Gaming Commission based on a provision of this Ordinance;

(8) Any person who is in privity with a violator shall be deemed to be in violation of this Ordinance to the same extent as the violator, and shall be treated accordingly;

(9) Any Primary Management Official is responsible to ensure that all Key Employees

assisting in the operation of any gaming activity comply with this Ordinance. A violation by any such employee shall be deemed a violation by the Primary Management Official, subjecting such official to civil enforcement action, and it shall not be a defense that the official was unaware of the violation;

(10) No person, whether playing in or conducting any gaming activity authorized under this Ordinance, shall:

(A) Use bogus or counterfeit cards or substitutes or use any game cards that have been tampered with;

(B) Employ or have on one's person any device to facilitate cheating in any gaming activity;

(C) Use any fraudulent scheme or technique, including when an operator or player directly or indirectly solicits, provides, or receives inside information of the status of a game for the benefit of either person;

(D) Knowingly cause, aid, abet, or conspire to violate any provision of this Ordinance or any rule adopted under this Ordnance; or

(E) Participate, either directly or indirectly, in any activity that would be considered cheating; and

(11) Alcoholic beverages shall not be possessed, sold, or offered for sale on the premises of any Tribal gaming establishment unless otherwise authorized by the Tribal Council.

(b) The Commission shall have the authority to subject any person committing an act or omission as prohibited here or elsewhere within this Ordinance to a penalty deemed appropriate by the Commission.


## Section 20-2-12. Civil enforcement.

(a) The Commission may take any one or a combination of the following actions with respect to any person who violates any provision of this Ordinance:

(1) Impose a civil penalty to the maximum extent allowable under the Tribal Code. If such violation is a continuing one, each day of such violation may be deemed a separate offense.

(2) Suspend or revoke any gaming license issued by the Commission.

(3) Bring an action in the Tribal Court for imposition of one or more of the following sanctions:

(A) seizure of any gaming apparatus, proceeds or other property of a licensee connected with the gaming activities engaged in by the licensee;

(B) in the case of any nonmember of the Tribe, expulsion from the Reservation;

(C) collection of any unpaid fees, interest, or penalties;

(D) execution on any nonexempt property of a violator located within the exterior boundaries of the Reservation;

(E) a penalty of one hundred dollars ($100.00) per day for failure to file any Aft

report when due and one thousand dollars ($1,000.00) per day for failure to file such report after notice and demand; or

(F) Any other action deemed necessary or appropriate by the Tribal Court.

(b) The Tribal Court shall have jurisdiction over any action brought by the Commission to the fullest extent permitted by law, and shall have the authority to impose any and all sanctions provided for within this Ordinance and elsewhere.

(c) Every person who applies for and accepts a gaming license shall be deemed responsible for reading and adhering to all rules and regulations relating to the conduct of gaming on Tribal lands.


## §20-2-13. Hearings and appeals.

(a) Where deemed appropriate and if requested, before taking any action regarding a possible violation of this Ordinance, the Commission shall hold a hearing allowing the alleged violator an opportunity to be heard.

(b) The Commission shall employ its best efforts to notify the alleged violator, in person or by letter delivered to his or her last known address, of the charges against him or her. If the alleged violator fails to respond, or cannot be found, the commission may proceed with a hearing notwithstanding, and take such action as it deems appropriate.

(c) Any person aggrieved by a decision made or action taken by the Commission after notice and opportunity for a hearing, may petition the Tribal Court for rehearing. Such petition shall specifically set forth the reasons for aggrievement, and be filed with the Tribal Court no later than sixty (60) days after the Commission's decision and action. In any such case, a waiver of sovereign immunity must first be granted by the Tribal Council.

(d) Any person aggrieved by a decision made or action taken by the Commission without notice and opportunity for a hearing, may petition the Commission for a hearing and reconsideration. The petition shall be filed within thirty (30) days after the petitioner knew or should have known of the decision or action. The Commission shall grant a prompt hearing upon receiving such a petition, and shall reconsider its decision or action in light of evidence and argument presented at a hearing.

(e) Any licensee paying a penalty for late filing or failing to file a report for which there is an acceptable explanation may petition the Commission for credit or refund. The petition shall be filed within thirty (30) days after the petitioner knew or should have known that the payment was excusable, but not more than six (6) months after payment in any case.


## §20-2-14. Sovereign immunity.

The Tribal Gaming Commission is an instrumentality of the Poarch Band of Creek Indians, a federally-recognized Indian Tribe. Accordingly, the Commission shares the same sovereign immunity from unconsented suit as the Tribe. That immunity may be waived by the Tribal Council upon a recommendation of the Commission setting forth the reason for and the scope of the proposed waiver. The Tribal Council may approve that waiver, with or without modifications, or it may deny such recommendation. Any recommendation by the Commission for a waiver and decision of the Tribal Council on that recommendation shall be made within fifteen (15) days of the filing of a petition authorized by Section 20-2-13 of this Ordinance.


**CHAPTER 3 GAMING LICENSES**

**Section 20-3-1. Requirement of a gaming license; posting of license.**

(a) A Tribal gaming license shall be required of all employees of a gaming establishment including each Key Employee, Primary Management Official and alternate Primary Management Official, any Management Contractor, and any Tribal gaming enterprise.

(b) All licenses issued under this Ordinance to a Management Contractor or a Tribal gaming enterprise must be posted by the licensee and kept posted at all times in a conspicuous place in the establishment for which issued until replaced by a succeeding license. All other licenses must be worn by the licensee in a conspicuous place at all times while working in the establishment.

(c) A separate license shall be issued for each gaming establishment and for each class of gaming sought to be licensed.

**Section 20-3-2. Application.**

(a) Each applicant for an initial gaming license shall complete an application. Such application shall request the information specified in sections 20-3-2(d) and 20-41(a) of this Ordinance and shall contain the information specified in section 20-4-1(b) of this Ordinance. Each applicant seeking renewal of an existing license shall also complete an application, however, such application shall require less detail. All applications shall be signed by the applicant if a natural person; or where the applicant is an association or partnership, by a member or partner thereof; or where the applicant is a Tribal gaming-enterprise, by an authorized board member thereof; or where the applicant is a corporation, by an executive officer thereof, or by some other person specifically authorized by the corporation to sign the application, in which case written evidence of authority to bind the applicant shall be attached. If any change is made in that authority, before or after a license is issued, the Commission shall be immediately informed in writing Until that information is filed with the Commission, any action of or commitment made by the representative shall be binding upon the applicant.

(b) Before a Management Contractor can be issued a gaming license, a background investigation must be successfully completed on each person having a direct or indirect financial interest in a management contract. In the event of a proposed change in the persons having a direct or indirect financial interest in a management contract, the Commission must be immediately notified and a background investigation shall be conducted on the proposed person prior to any change.

(c) Before a Tribal gaming enterprise can be issued a gaming license, a background investigation must be successfully completed on each board member of such enterprise. In the event of a proposed change in the board members, the Commission must be immediately notified and a background investigation shall be conducted on the proposed person prior to any change.

(d) In addition to the information requested in subsection (a) an application shall also request the following information:

(1) The location of where a Management Contractor will operate a gaming enterprise or where a Primary Management Official or a Key Employee will be employed; and

(2) If the applicant is a corporation, association, partnership or other group, the names and interests of any person having a direct or indirect financial interest in the business; and

(3) If the applicant is a Tribal gaming enterprise, the names of each board member; and

(4) Each applicant for a license who has or will have a contract with the Tribe to manage a Tribal gaming establishment shall state whether or not applicant has a management contract to operate a gamin& establishment that competes for patrons within the market area of the Tribes gaming establishment, which shall be deemed to be the area within a

400 mile radius of the Tribe's gaming establishment; and

(5) Each applicant for a license who has or will have a contract with the Tribe to manage a Tribal gaming establishment shall file an organizational chart of its management organization; and

(6) Such other information and details as the Commission may require in order to properly discharge its duties.

(e) Each application shall be submitted to the person indicated on such application accompanied by payment of the appropriate non-refundable application fee as specified in section 20-3-5(b).


### Section 20-3-3. License issuance and renewal.

(a) The Commission may issue or renew a gaming license to any applicant provided that no license shall be issued to or renewed for an applicant:

(1) Who is not a person of good character, honesty, and integrity;

(2) Whose prior activities, criminal record, reputation, habits, and associations pose a threat to the public interest of the Tribe or to the effective regulation and control of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, and activities in the conduct of gaming or the carrying on of the business and financial arrangements incidental to the conduct of gaming;

(3) Who has had, or who is in privity with anyone who has had, a gaming license revoked for cause in any jurisdiction;

(4) Who is delinquent in the payment of any obligation owed to the Tribe or any Tribal enterprise pursuant to this Ordinance or any other document relating to gaming;

(5) Who has supplied materially false or misleading information or who has omitted material information with respect to the information required by this Ordinance; or

(6) Who has failed to comply with this Ordinance or any regulation promulgated by the Council, the Commission, or any other relevant organization.

(b) Each initially issued license shall be valid for a one (1) year period commencing on the date of issue. An application for renewal shall be completed and submitted no more than ninety (90) days, but no less than forty-five (45) days, before expiration of a current license. A renewal license shall be valid for a one (1) year period commencing on the date of expiration of the current license.

(c) A gaming license may not be assigned or transferred. Such license is valid only for use by the person in whose name it is issued, at the laming establishment for which it is issued, and for the class of gaming for which it is issued.

(d) The Commission may, at any time, require that a bond in an amount of up to S 1,000,000.00 be posted by a Management Contractor to ensure performance of the relevant management contract and to ensure conformance with all applicable rules and regulations.


### Section 20-3-4. License suspension and revocation.

(a) No applicant has an absolute right to a gaming license. A gaming license is a revocable privilege and no holder acquires any vested rights therein or thereunder.

(b) If, after issuance of a gaming license, the Commission receives reliable information indicating that a person does not meet the qualifications of a Primary Management Official or a Key Employee, the Commission shall temporarily suspend such license and shall notify the licensee in writing of the suspension and the proposed revocation. Similar action shall be taken and the , management Contractor or the Tribal gaming enterprise, respectively, notified should such information be obtained regarding any person having a direct or indirect financial interest in a management contract or any board member of a Tribal gaming enterprise.

(c) Before a license can be permanently revoked, a hearing must be held. The Commission shall notify the licensee of the proposed revocation and of a time and place for a hearing. Within a reasonable time of such hearing, the Commission shall make its final determination as to whether the license shall be reinstated or permanently revoked. Notification of any such revocation shall be provided to the National Indian Gaming Commission.

(d) The same procedure for revocation shall be followed if such information regarding ineligibility is received initially by the National Indian Gaming Commission.

## Section 20-3-5. License and application fees.

(a) Where class gamings involved:

> (1) The annual fee for each gaming license issued pursuant to this Ordinance for the holder of a valid management contract shall be six hundred dollars ($600.00). For each Primary Management Official, the annual fee shall be one hundred dollars ($100.00), and for each Key Employee, the annual fee shall be sixty dollars ($60.00). This fee shall be paid upon successful completion of a background investigation, but before issuance or renewal of a gaming license.

> (2) The application fee for each gaming license application submitted shall be one hundred dollars ($100.00) for each Management Contractor. For each person having a direct or indirect financial interest to a management contract, the application fee shall be seventy-five dollars ($75.00). For each Primary Management Official and alternate Primary Management Official, the application fee shall be fifty dollars ($50.00). For each Key Employee, the application fee shall be twenty-five dollars ($25.00). Such fee shall be non-refundable and shall be paid upon submission of a license application. No application shall be considered unless accompanied by proper payment.

(b) Where class III gaming is involved:

> (1) The annual fee for each gaming license issued pursuant to this Ordinance for the holder of a valid management contract shall be ten thousand dollars ($10,000.00). For each Primary Management Official, the annual fee shall be one thousand dollars ($1,000.00), and for each Key Employee, the annual fee shall be one hundred dollars ($100.00). This fee shall be paid upon successful completion of a background investigation, but before issuance or renewal of a gaming license.

> (2) The application fee for each gaming license application submitted shall be two thousand dollars ($2,000.00) for each Management Contractor. For each person having a direct or indirect financial interest in a management contract, the application fee shall be one thousand dollars ($1,000.00). For each Primary Management Official and alternate Primary Management Official, the application fee shall be five hundred dollars ($500.00). For each Key Employee, the application fee shall be one hundred dollars ($100.00). Such fee shall be non-refundable and shall be paid upon submission of a license application. No application shall be considered unless accompanied by proper payment.

(c) The amount of these fees may, at any time, be increased by the Commission provided, however, that any such increase shall not be retroactive.

## CHAPTER 4 BACKGROUND INVESTIGATIONS

### Section 20-4-1. Requirement of background investigations.

(a) The Commission shall conduct or shall cause to be conducted a background investigation for each Primary Management Official, alternate Primary Management Official, Key Employee, any person having a direct or indirect financial interest in a management contract, and each board member of a Tribal gaming enterprise. In furtherance of this objective, the Commission shall request the following information:

(1) Their full name, other names used if any, date and place of birth, gender, citizenship, social security number, drivers license number(s) for the past five (5) years, current business and residence telephone numbers, and all languages either spoken or written other than English; and

**AMENDED 8-30-93**
**INITIALS_____**
[Initials on original document.]

(2) For Management Contractors and persons having a direct or indirect financial interest in a management contract, their dates and places of residence from age eighteen (18) to the present. For all other applicants, their dates and places of residence for the past ten (10) years; and

(3) Their dates and places of employment, including the positions held, type of work engaged in, and any ownership interest in those businesses for the past ten (10) years; and

(4) For Management Contractors and persons having a direct or indirect financial interest in a management contract, the names and current addresses of at least three personal references, including one personal reference who was acquainted with the applicant during each period of residency for the last five (5) years listed under subsection (2) above. For all other applicants, the names and current addresses of at least three personal references, including one personal reference who was acquainted with the applicant during each period of residency listed under subsection (2) above; and

(5) A description of any previous or ongoing gaming or business relationship with any Indian tribe, including ownership interests in those businesses; and

(6) A description of any previous or ongoing relationship with the gaming industry in general, including ownership interests in those businesses; and

(7) The name and address of any licensing or regulatory agency with which the person has filed an application for a license or permit related to gaming, whether or not such license or permit was granted; and

(8) For any felony charge. conviction, or pending felony prosecution (including any gaming related charges), the charge, the name and address of the court involved, and the date and disposition; and

(9) For any misdemeanor charge, conviction, or pending misdemeanor prosecution (including aany.gaming related charges), within ten (10) years of the date of application, the charge, the name and address oœ the court involved, and the date and disposition; and

(10) The name and address of any licensing or regulatory agency with which the person has filed an application for an occupational license or permit, whether or not such license

or permit was granted; and

(11) For a Management Contractor and any person having a direct or indirect financial interest in a management contract, a complete financial statement showing all sources of income for the previous three (3) years, and all assets, liabilities, and net worth as of the date of the submission; and

(12) A recent photograph; and

(13) A set of fingerprints using form FD-258, Applicant Fingerprint Card; and

(14) Any other information the Commission deems applicable and relevant.

(b) Any form completed leading to a background investigation shall contain language as required by the National Indian Gaming Commission to comply with the Privacy Act of 1974.

### Section 20-4-2. Completion of background investigations; submission to the National Indian Gaming Commission.

(a) Within seven (7) days of receiving any application for a Tribal gaming license, such application shall be forwarded to the Commission. The Commission shall retain the original and shall forward one (1) copy to the Tribal Police Department. All background investigations shall be conducted either directly or indirectly by the Tribal Police Department. All information received during this process, including the identity of any persons interviewed, shall be strictly confidential. At a minimum, all applicants must meet the requirements of sections 20-3-3(a) and 20-2-10 of this Ordinance.

(b) Upon completion of all background investigations, the results shall be forwarded to the Commission. Included shall be an explanation of the steps taken in conducting such investigation and a complete account of the information obtained. Also included shall be a recommendation to the Commission as to whether the applicant meets the requirements of section 20-2-10 of this Ordinance. Based upon the information forwarded to the Commission by the Police Department, the Commission shall make a final determination as to whether the application should be approved.

(c) If the determination of the Commission is unfavorable, both the applicant and the National Indian Gaming Commission shall be notified that the application has been denied. Notification to both parties shall take the form of a written letter summarizing the basic steps taken and where appropriate, a statement as to the reason(s) why the application was denied.

(d) If the determination of the Commission is favorable and the applicant is a Tribal gaming enterprise and all Board members also received a favorable recommendation or the applicant is a Management Contractor where the application pertains to class III gaming and all persons having a direct or indirect financial interest in a management contract also received a favorable recommendation, a permanent gaming license may be issued.

(e) If the determination of the Commission is favorable and the applicant is a Primary Management Official, an alternate Primary Management Official, a Key Employee, or a Management Contractor where the application pertained to class II gaming, a temporary gaming license may be issued. Unless written authorization is made by the Commission, no person shall be permitted to operate within a gaming establishment for more than ninety (90) days with a temporary gaming license.

(1) Within thirty (30) days of issuing a temporary gaming license, the Commission shall forward to the National Indian Gaming Commission the following:

(A) A copy of the completed application and the Commission's recommendation as to whether a license should be granted; and
(B) An investigative report on each background investigation containing the steps taken in conducting the investigation, the results obtained, the conclusions reached

and the bases for those conclusions. A specific statement shall also be included as to whether the person meets the requirements of section 20-2-10 of this Ordinance.

(2) The National Indian Gaming Commission shall have 30 days in which to evaluate the application, request additional information, and notify the Commission of any objections. If additional information is requested, the 30 day period shall be suspended until the National Indian Gaming Commission receives such additional information. At the conclusion of the 30 day period, the Commission:

  (A) May grant a permanent license where no objection is raised by the National Indian Gaming Commission; or
  (B) May reconsider the application taking into consideration any objection of the National Indian Gaming Commission.

(3) In all cases, the Commission shall make the final determination as to whether a license should be issued or renewed.

(f) Unless written authorization is made by the Commission, no gaming establishment shall employ a person who does not have a permanent license after 90 days of hire.

(g) Where an applicant is seeking renewal of a gaming license or a person is seeking reapproval of their role as a person with a direct or indirect financial interest in a management contract or as a board member of a Tribal gaming enterprise, the appropriate renewal application shall be completed and submitted no more than ninety (90) days, but no less than forty-five (45) days, before expiration of a current license. The Police Department of the Poarch Band of Creek Indians shall complete a background investigation to the extent they deem necessary to ensure the continued suitability of the person.

(h) All applications filed by a Primary Management Official, an alternate Primary Management Official, a Key Employee, a Management Contractor, a person having a direct or indirect financial interest in a management contract, a Tribal gaming enterprise, or a Board member of such enterprise, shad be retained by the Commission for a period of three (3) years after their disassociation with the Tribe. For persons other than those mentioned above, the Tribal Personnel Office shall retain applications for employment for the term of the individual's employment or for a period of three years from the date of employment, whichever is greater. Such applications shall, upon request, be subject to review by the National Indian Gaming Commission.


## CHAPTER 5 FINANCIAL MANAGEMENT AND ACCOUNTING PROCEDURES

### Section 20-5-1. Records and reports.

(a) Prior to operation of any gaming establishment, a written cash management and internal control system adequate to safeguard all funds of the establishment shall be established and implemented by the managing entity whether that entity be a Tribal one or an outside entity. If such system is established and implemented by an outside entity, the Commission or any Trial enterprise shall have the right to approve such system and shall, at any time once implemented, have the right to monitor this system whether directly or through an agent. This includes the right to inspect and examine all accounting records and books of accounting pertaining to the gaming establishment as well as all source documentation for these records. Such cash management and internal control system shall include procedures relating to the handling of internal bankroll and cash receipts, deposits to the bank accounts of the establishment, disbursements from such bank accounts, and all other necessary accounting and auditing procedures relating thereto.

(b) All financial data, records, and accounts are the property of the Tribe and shall be kept on the premises of the gaming establishment. The Commission shall have access, either directly or through an agent, to the daily operations of the establishment, and shall have the right to verify the dally gross revenues and income earned from all Tribal gaming activities. The Commission shall also have access to any other gaming related information the Commission deems appropriate.

(c) No person shall falsify or cause to be falsified any books or records relating to any transaction connected with the conduct of gaming activities.

(d) Upon request, the Commission shall be provided with copies of all documents, reports, or other related paperwork produced in the operation of a gaming establishment. Such items shall be furnished to the Commission no later than one (1) week after the request is made or no later than one (1) week after the items are produced. These items will include, but not be limited to, verifiable financial reports showing the revenues and expenses of the establishment, balance sheets, operational budgets and projections, tour/bus attendance and compensation, tax reports, and all items completed for the National Indian Gaming Commission or any other governmental agency.

(e) An independent audit, conducted by a certified public accountant approved by the Commission, shall be performed at least annually of all financial information. The results of such audit shall be submitted to the National Indian Gaming Commission. All gaming related contracts that result in purchases of supplies, services, or concessions for more than 525,000 in any one year (excluding contracts for professional legal or accounting services) shall be specifically included within the scope of such audit.

(f) All financial and accounting aspects of each gaming establishment shall be in compliance with the operational procedures of the particular establishment.

## Section 20-5-2. Payments to the Tribe.

(a) A monthly franchise fee of an amount as specified within any applicable agreement shall be paid to the Tribe-for the gaming operations of a establishment. This fee shall be guaranteed and shall have priority over all expenses and other cash disbursements including the retirement of development and construction costs.

(b) Where an outside entity has the responsibility of managing the gaming establishment, the Tribe shall receive a minimum of sixty percent (60%) of the net operating profits of the gaming operations as defined in any relevant management agreement or operational manual, in addition to the franchise fee guaranteed in subsection (a) above, to be used in a manner consistent with this Ordinance.

## CHAPTER 6 MISCELLANEOUS PROVISIONS

### Section 20-6-1. Applicable law.

All controversies arising under this Ordinance or otherwise relating to gaming on the Reservation of the Poarch Band of Creek Indians, shall be resolve in accordance with the laws of the Tribe.

### Section 20-6-2. Service of process.

The Commission shall, by written notification to the National Indian Gaming Commission, designate an agent for service of any official determination, order, or notice of violation. Any Management Contractor shall also so notify the National Indian Gaming Commission. Pa 18

### Section 20-6-3. Savings provision.

If any provision of this Ordinance or the application thereof to any person or circumstance is held invalid, the invalidity shall not effect other provisions or application of the Ordinance that can be given

effect without the invalid provision or application, and to this end, the provisions of this Ordinance are severable.

### Section 20-6-4. Amendment.

Any amendment to this Ordinance shall be submitted to the National Indian Gaming Commission for approval within 15 days after adoption.

### Section 20-6-5. Effective date.

This Ordinance shall be effective on the date of enactment.

Back to Top

## Poarch Band of Creek Indians Code

As Amended: June 7, 1997; [Includes some revisions dated 1999.]

# Ordinances

# [Bingo]

**TRIBAL ORDINANCE LICENSING AND PERMITTING PLAYING OF BINGO ON THE POARCH BAND OF CREEK INDIAN RESERVATION UNDER CERTAIN TERMS AND CONDITIONS**

We, the members of the Poarch Band of Creek Indians, being a federally recognized Indian Tribe and organized pursuant to the Final Determination of Federal Acknowledgment, 25 U.S.C. 476; and the Act of June 18, 1934 (48 Stat. 984); and its authority to provide for the economic development of the Tribe, the Tribal Council of the Poarch Band of Creek Indians Tribe hereby establishes and enacts this ordinance which shall establish the purposes, powers and duties of the Creek Bingo Parlor.

In any suit, action or proceeding involving the validity or enforcement of or relation to any of its contract, the Tribal Council shall be conclusively deemed to have become established and authorized to transact business and exercise its powers upon proof of the adoption of this ordinance. A copy of the ordinance duly certified by the Secretary of the Council shall be admissible in evidence in any suit, action or proceeding.

## ARTICLE I - DEFINITIONS

The Following terms and phrases when used in this Ordinance shall have the meaning ascribed to them, except where the context clearly indicates a different meaning. It is hereby declared:

    1. "Bingo" or guest game shall mean and refer to activities commonly known as Bingo or other similarly organized and played games wherein participants pay a sum of money for the use or benefit of one or more drawn by chance, one by one, and announced, and the numbers are continuously ascertained at random until a participant announces that he has matched up his numbered purchased card with enough randomly drawn numbers to complete the desired winning pattern of numbers. At this time the participant calls out "Bingo" or such other desired word or phrase, and is declared the winner of a predetermined prize.

    2. "Bingo cards" shall mean and refer to the flat, usually rectangular piece of paper or this pasteboard, normally employed by players engaged in the game of bingo. More than one set of Bingo numbers may be printed on any single piece of paper.

    3. The Poarch Band of Creek Indian Reservation is a non-profit organization engaged in charitable, civic, community, benevolent, religious and scholastic works.

    4.. "Owner" shall mean and refer to the Poarch Band of Creek Indians Reservation.

Hereafter the words owner and reservation shall be defined and used interchangeably.

5. "Contractor" shall mean and refer to the management contractor who operates for the owner the premises used for Bingo.

6. "Player" shall mean any person paying some amount of U. S. currency to the owner or the operator or his agent, servant, or employee for admission to or participation in a bingo game, and who has some reasonable expectation of receiving a prize if one or more of his numbered cards contains a sufficient amount of numbers which are the same as those announced by the contractor during a Bingo game:

7. "Prizes" shall mean and refer to any U. S. currency, cash or other property or thing of value awarded to a player of a Bingo game, or players in a series of Bingo games.

8. "Proceeds" All the profits derived form the Bingo game(s) after payment of prize money, expenses and fees, shall be collected by the Poarch Band of Creek Indians for the support of programs to promote the health, education and general welfare of the Poarch Band of Creek Indians by:

> a) Benefiting persons by enhancing the opportunities for religious or educational advancement, by relieving or protecting them from disease, suffering or distress, by contributing to their physical well being by assisting them in establishing themselves in life as worthy, useful citizens, or by increasing their comprehension of and devotion to the principles upon which the nation was founded.

> b) Initiating, performing, or fostering worthy public works or enabling and furthering the erection or maintenance of public structures.

> c) Lessening the burdens borne by government or voluntarily supporting, augmenting, or supplementing services which government would normally render to the Poarch Band of Creek Indians; or

> d) The improving, expanding or maintaining of real property owned by the Poarch Band of Creek Indians.

## ARTICLE II - OPERATIONS

1. It shall be unlawful for anyone to perform, conduct, operate, maintain or supervise a Bingo game or a series of Bingo games except the Poarch Band of Creek Indians.

2. Days of Operation: Bingo games may be conducted each and every day of the week and at any hour of the day or night at the discretion of the reservation, and there shall be no limit as to the prize money for any single game or session.

3. All persons involved in the conduct of guest games must be bonafide employees of the reservation or the contractor.

4. No one under eighteen (18) years of age shall be allowed to play.

## ARTICLE III - AUDIT

1. An Annual Audit of all revenues and expenditures will be performed by the Poarch Band of Creek Indians.

**ARTICLE IV - NAME TAGS**

1. All persons operating or assisting in the operations or conduct of any Bingo games shall wear legible tags evidencing their name and the legend of the Poarch Band of Creek Indians.

## APPROVAL

I, the Chairman of the Poarch Band of Creek Indians, hereby affix my signature to this Ordinance authorizing it to become official this 30th day of November, 1984, in accordance with established Tribal policy.

_____ /s/ _____
Eddie L. Tullis, Chairman

## CERTIFICATION

I, the undersigned, certify that the foregoing is a true extract from the minutes of the Tribal Council meeting of the Poarch Band of Creek Indians comprised of eighteen members, with 14 in attendance on the 30th day of November, 1984, and that the above is in conformity with the provisions therein adopted by a vote of 12 in favor, 1 abstentions, and that the above is the signature of the Chairman of the Poarch Band of Creek Indians.

_____ /s/ _____
Eugene Madison, Secretary

Back to Top

---

# TRIBAL COUNCIL ORDINANCE 85:01

August 18, 1985

Pursuant to the powers and authority of the Constitution of the Poarch Band of Creek Indians adopted on June 8, 1985, to provide for the health, safety, morals and welfare of the Tribe, the Tribal Council of the Poarch Band of Creek Indians hereby establishes as a public body and Tribal entity known as the Poarch Creek Indian Housing Authority (hereinafter referred to as Authority), and enacts this Ordinance which shall establish the purposes, powers and duties of the Authority.

In any suit, action or proceeding involving the validity or enforcement of or relating to any of its contracts, the Authority shall be conclusively deemed to have become established and authorized to transact business and exercise its powers upon proof of the adoption of this Ordinance. A copy of the Ordinance duly certified by the Secretary of the Council shall be admissible in evidence in any suit, action or proceeding.

## ARTICLE I - DECLARATION OF NEED

It is hereby certified: